361 So.2d 866 (1978)
STATE of Louisiana
v.
Aaron PAYTON and Byron G. Coulon.
No. 62388.
Supreme Court of Louisiana.
June 30, 1978.
On Rehearing August 18, 1978.
*867 William J. Guste, Jr., Atty. Gen., Barbara A. Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Thomas Chester, Dennis J. Waldron, Asst. Dist. Attys., for plaintiff-appellant.
Jay C. Zainey, New Orleans, for Aaron M. Payton.
John Wilson Reed, New Orleans, for Byron Coulon.
DENNIS, Justice.
The ultimate issue raised in this review of criminal pre-trial proceedings is whether the merger of the existing capital murder sentence procedure, La. R.S. 14:30, La. C.Cr.P. art. 905 et seq., and the new second degree murder statute, La. R.S. 14:30.1(B), deprives a defendant of his right to a fair trial or exposes him to cruel and unusual punishment. The trial court refused to sustain defendant Byron Coulon's motion to quash but granted partial relief by declaring unconstitutional the new second degree murder statute, La. R.S. 14:30.1(B). The State appealed, La. Const. 1974, art. 5, § 5(D), contending that the legislature's combination of statutes pertaining to first degree murder, second degree murder and capital sentences does not offend any concept of fundamental fairness. Defendant Coulon sought writs, which we granted to review his complaint that the first degree murder death penalty should be judicially reprobated because the statutory scheme for its imposition fails to comply with the requirement of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), that standardless jury discretion be replaced by procedures guarding against arbitrary or capricious imposition of death sentences.
For the reasons hereinafter assigned we conclude that, as strictly construed in the light of governing fundamental principles, one aspect of the legislation must be declared invalid, but the remainder of the statutory design is severable and constitutionally tolerable. Although the legislative techniques employed in adding the new second degree murder offense to our law raise serious questions, we cannot upon this our first examination say that the entire enactment was so ill advised as to warrant judicial condemnation.
Before considering the issues presented it is necessary to understand the Louisiana statutory scheme for the imposition of the death penalty existing prior to the enactment of the new second degree murder law. In Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), the United States Supreme Court held that Louisiana legislation reinstituting the death penalty failed to provide a constitutionally adequate response to the rejection by Furman of unbridled jury discretion in the imposition of capital sentences. Because the statutes lacked standards to guide the jury in selecting those among first degree murderers who should receive the death penalty, thus plainly inviting the jurors to disregard their oaths and choose a verdict for a lesser offense whenever they felt the death penalty was inappropriate, the statutes failed to provide adequate safeguards against the arbitrary *868 and capricious imposition of death sentences. After the Roberts decision, the legislature in 1976 redefined first and second degree murder, provided specific procedures to be followed in determining the sentence to be imposed for a capital offense, and provided for mandatory review of death sentences by this Court.
The Louisiana statutory scheme, apparently modeled on the Georgia statutes which were upheld in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), defines first degree murder as a homicide committed with specific intent to kill or to inflict great bodily harm. The penalty for the crime is death or life imprisonment without parole, probation or suspension of sentence in accordance with the recommendation of the jury. La. R.S. 14:30.
The capital defendant's guilt or innocence is determined in the traditional manner in the first stage of a bifurcated trial. The trial judge is required to instruct the jury as to the law applicable to the charged offense and to each lesser included offense. La. C.Cr.P. art. 803.
The lesser included offense of second degree murder was redefined in 1976 as a homicide committed when the offender is attempting or perpetrating any of certain enumerated felonies, even though he has no intent to kill.[1] The penalty for second degree murder was set at life imprisonment at hard labor without eligibility for parole, probation or suspension of sentence for a period of forty years. La. R.S. 14:30.1.
After a verdict of guilty to first degree murder, a sentencing hearing is conducted before the same jury. La. C.Cr.P. art. 905 et seq. The sentence will be life imprisonment unless the jury finds unanimously and beyond a reasonable doubt at least one statutorily defined "aggravating circumstance."[2] The aggravating circumstances are:
"* * * (a) The offender was engaged in the perpetration or attempted perpetration of aggravated rape, aggravated kidnapping, aggravated burglary, or armed robbery;
(b) The victim was a fireman or peace officer engaged in his lawful duties;
(c) The offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping;
(d) The offender knowingly created a risk of death or great bodily harm to more than one person;
(e) The offender offered or has been offered or has given or received anything of value for the commission of the offense;
(f) The offender at the time of the commission of the offense was imprisoned after sentence for the commission of an unrelated forcible felony;
(g) The offense was committed in an especially heinous, atrocious or cruel manner." La. C.Cr.P. art. 905.4.
Having found an aggravating circumstance, however, the jury is not required to impose the death penalty. Instead, it is merely authorized to impose it after considering evidence of "any mitigating circumstances."[3] Unless the jury determines unanimously *869 that the death penalty should be imposed, the defendant will be sentenced to life imprisonment without parole, probation or suspension of sentence. In the event the jury imposes the death penalty, it must designate in writing the aggravating circumstance which it found to exist beyond a reasonable doubt.[4]
Review by this Court is provided for in every case in which the death penalty is imposed.[5] To assist it in deciding whether to sustain the death penalty this Court requires by rule that it be supplied, in every case, with a verbatim transcript of the sentencing hearing and a report from the trial judge in the form of a standard questionnaire.[6] In deciding whether the sentence of death is to be sustained in any given case, this Court shall determine if the sentence is "excessive."[7]
The questions presented in the instant case were created in 1977 when the legislature added a new, second definition of second degree murder:
"The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure." La. R.S. 14:30.1(B).
The additional definition of second degree murder makes it possible for a person who commits an unaggravated, intentional homicide to be convicted of, or plead guilty to, a lesser offense and receive a life sentence parolable after forty years without the necessity of a capital sentencing hearing. Before the second definition was added, a homicide committed with a specific intent to kill, but without aggravating circumstances, was punishable as first degree murder by life imprisonment without possibility of parole, probation or suspension of sentence,[8] only after a sentencing hearing in which the jury failed to find an aggravating circumstance.[9]
The passage of the new second degree murder statute evidently was impelled both by humanitarian arguments against subjecting all convicted first degree murderers to the capital sentencing hearing, as well as by the practical need for a vehicle to facilitate plea bargains, convictions and sentencings in murder cases devoid of aggravating circumstances. Defendant does not quarrel with the underlying motives for the enactment, but he contends that a logical interpretation of the statute will either erase the effect of the bifurcated trial, the only capital sentencing procedure to pass constitutional muster by the Supreme Court, see, Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); or permit arbitrary and capricious imposition of the death penalty.
Defendant argues that a new second degree murder law defining the crime as a first degree murder accomplished without aggravating circumstances impliedly amends the definition of first degree murder to require proof of at least one aggravating circumstance as an essential element of the capital offense; accordingly, he contends the State would be entitled to introduce any and all evidence pertaining to the circumstances of the offense and the character and propensities of the offender at the guilt or innocence portion of the trial. If the statute were to be interpreted to allow the general introduction of such evidence we agree that it would be unconstitutional.
*870 The Supreme Court in Gregg v. Georgia, supra, acknowledged that much of the information that is relevant to the sentencing decision may have no relevance to the question of guilt, or may even be extremely prejudicial to a fair determination of that question. 428 U.S. at 190, 96 S.Ct. 2909. The Court noted that in other situations it had concluded that a jury cannot be expected to consider certain evidence on one issue, but not another, see, e. g., Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), and suggested that a bifurcated procedure  one in which the question of sentence is not considered until the determination of guilt has been made  is the best answer. 428 U.S. at 190, 96 S.Ct. 2909. See, A.L.I. Model Penal Code, § 201.6, Comment 5, pages 74-75 (Tentative Draft No. 9, 1959). We agree that for the determination of sentences, justice generally requires that there be taken into account the circumstances of the offense together with the character and propensities of the offender, Gregg v. Georgia, 428 U.S. at 190, 96 S.Ct. 2909; Pennsylvania ex rel Sullivan v. Ashe, 302 U.S. 51, 58 S.Ct. 59, 82 L.Ed. 43 (1937), but the state constitutional due process and fair trial guarantees would not allow the legislature to enact laws permitting the unregulated introduction of such evidence contrary to the established rules of admissibility during the trial with respect to guilt or innocence. The rules of evidence and certain of the constitutional safeguards have a common core, i. e., an abiding concern that criminal convictions be had only upon the basis of relevant and trustworthy evidence. Legislation at cross purposes with this fundamental concern cannot be sanctioned by this Court. La. Const. 1974, art. I, §§ 2 and 16; State v. Prieur, 277 So.2d 126, 130 (La. 1973); cf. Hills v. Henderson, 529 F.2d 397, 401, footnote 6 (5th Cir. 1976); Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975).
As we construe the new statutory scheme, however, it may be applied constitutionally by strictly adhering to the statutory language and by severing one part which would allow the introduction of impermissibly prejudicial evidence prior to the jury's determination of guilt or innocence.
By defining second degree murder as an unaggravated, specific intent homicide, the legislature clearly intended by implication to remove this type of conduct from the definition of first degree murder and to redefine the capital offense as a specific intent homicide accomplished with a statutorily prescribed aggravating circumstance.[10] The trouble arises because the lawmakers chose to define the crucial aggravating circumstances merely by reference to Code of Criminal Procedure Article 905.4, which sets forth a list of circumstances of the offense and indications of the character and propensities of the offender to be focused on in the sentencing hearing.[11] A careful reading of the statutes *871 indicates, however, that the lawmakers intended to refer only to such aggravating circumstances with which "the killing is accomplished." La. R.S. 14:30.1(B). Since the Article 905.4 list contains, in addition to circumstances by which the offense is accomplished, guidelines for evaluating the character and propensities of the offender, see, La. C.Cr.P. art. 905.2; Gregg v. Georgia, 428 U.S. at 190, 96 S.Ct. 2909, we conclude that the legislature did not intend to incorporate by reference the entire Article 905.4 list as part of the new first and second degree murder definitions. Specifically, it is apparent that the defendant's previous convictions of unrelated crimes, Article 905.4(c), do not constitute a circumstance by which the offense is accomplished, but are a means of determining the character and propensity of the offender, and therefore are to be excluded from the murder definitions.
On the other hand, the fact that an offense was committed in an "especially heinous, atrocious or cruel manner," Article 905.4(g), is a circumstance of the offense which the legislature evidently intended to include in the substantive crime definitions. By including this element, however, the legislature acted improperly and endangered the fair determination of a great many murder prosecutions. The potential for abuse in making heinousness, atrociousness, or cruelty an element of the offense is both readily apparent and virtually unlimited. Prosecuting attorneys would be encouraged, if not compelled, by such a rule to introduce each and every gruesome photograph and to elicit repetitively from State witnesses lengthy accounts of all grisly details related to the crime, regardless of the prejudicial effect upon the jury, as a legitimate effort to prove the heinous manner in which the crime was committed. There is great danger that the jury would be influenced improperly by such evidence in its determination of whether the defendant committed the offense, a question which fundamental fairness demands must be decided only upon relevant and trustworthy evidence.[12] Moreover, although the question of whether the crime was committed in an especially heinous, atrocious or cruel manner is an acceptable factor, among others, to be considered for purposes of sentencing, Gregg v. Georgia, 428 U.S. at 201, 96 S.Ct. 2909; Proffitt v. Florida, 428 U.S. at 254-6, 96 S.Ct. 2960, these terms are too vague to serve as constitutionally adequate elements within the definition of a criminal offense. The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. La. Const.1974, Art. I, § 13; Connick v. Lucky Pierre's, 331 So.2d 431 (La.1976); State v. Lindsey, 310 So.2d 89 (La.1975); State v. Dardar, 257 La. 191, 241 So.2d 905 (1970).
For these reasons we conclude that the attempt to adopt the heinous manner of commission language contained in Article 905.4(g) as an essential element of first and second degree murder offenses offends the state constitutional guarantees of due process and fair trial.[13] However, it is not necessary for us to declare unconstitutional the entire statute by which the legislature amended the first and second degree murder *872 definitions. Act 121 of 1977, which amended the second degree murder definition, expressly provided that
"[i]f any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."
We find that paragraph (g) of Article 905.4 is separable because the other paragraphs of the article are independent of it and can be given effect without the invalid portion.[14] Accordingly, we declare invalid only the legislative attempt to define first degree murder as a specifically intentional homicide "committed in an especially heinous, atrocious or cruel manner."
The sum of the legislative and judicial action limits capital murder to specifically intended homicides committed in five situations: murder committed in the course of aggravated rape, aggravated kidnapping, aggravated burglary, armed robbery, or attempts to commit these crimes; murder of a fireman or peace officer engaged in his lawful duties; murder by which the offender knowingly created a risk of death or great bodily harm to more than one person; murder committed for remuneration; murder committed by a prison inmate while serving sentence for a felony. Any other specifically intended homicide constitutes second degree murder. Each of the five classes of first degree murders is retained as an aggravating circumstance of the offense upon which the jury shall focus in the sentencing hearing. In addition the jury shall determine, in sentencing, if two other circumstances of the offense or of the character and propensities of the offender exist, i. e., whether the offender was previously convicted of an unrelated murder, aggravated rape, or aggravated kidnapping, and whether the offense was committed in an especially heinous, atrocious or cruel manner. Therefore, the second phase of the bifurcated trial, the procedure for a capital sentencing hearing, remains the same as it was when originally enacted.
The capital sentencing system which has evolved by virtue of the recent amendment of the second degree murder statute is strikingly similar to the provisions of the Texas penal code which were upheld by the Supreme Court in Jurek v. Texas, supra, a companion case of Gregg v. Georgia, supra. The defendant was sentenced to death after being convicted of capital murder, which was defined as an intentional or knowing homicide committed in any of five situations: murder of a peace officer or fireman discharging his duty; murder in the course of kidnapping, burglary, robbery, aggravated rape, arson, or attempts to commit these crimes; murder committed for or instigated by remuneration; murder committed while escaping or attempting to escape from a penal institution; and murder of a prison employee by an inmate. See, Vernon's Texas Code Ann., Penal Code § 19.03 (1973). Under the Texas capital sentencing procedure, subsequent to the return of a verdict finding a person guilty of one of the above categories of murder, the jury was required in a separate proceeding to answer three questions:
"`(1) whether the conduct of the defendant that caused the death of the deceased was committed deliberately and with the reasonable expectation that the death of the deceased or another would result;
"`(2) whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society; and
"`(3) if raised by the evidence, whether the conduct of the defendant in killing the deceased was unreasonable in response to the provocation, if any, by the deceased.' Art. 37.071(b) (Supp.1975-1976)." Jurek v. Texas, 428 U.S. at 269, 96 S.Ct. at 2955.
*873 If a jury found that the State had proved beyond a reasonable doubt that the answer to each of the three questions was yes, then the death sentence would be imposed. If the jury found that the answer to any question was no, then a sentence of life imprisonment resulted. See, Jurek v. Texas, 428 U.S. at 269, 96 S.Ct. 2950.
Although Texas had not adopted a list of statutory aggravating circumstances the existence of which could justify the imposition of the death penalty as had Georgia, see, Gregg v. Georgia, supra, and Florida, see, Proffitt v. Florida, supra, a plurality of the Supreme Court concluded that the state's action in narrowing the categories of murders for which a death sentence may ever be imposed serves much the same purpose. Jurek v. Texas, 428 U.S. at 270, 96 S.Ct. 2950. Because the Texas law essentially required that one of five aggravating circumstances be found before a defendant could be found guilty of capital murder, and that in considering whether to impose a death sentence the jury could be asked to consider whatever evidence of mitigating circumstances the defense could bring before it, it appeared, according to the opinion of the Court, that the Texas capital-sentencing procedure "guides and focuses the jury's objective consideration of the particularized circumstances of the individual offense and the individual offender before it can impose a sentence of death." 428 U.S. at 274, 96 S.Ct. at 2957.
The defendant contends that the changes in the Louisiana murder definitions nevertheless reintroduce in capital sentencing the arbitrariness and capriciousness condemned by Furman. He argues that eliminating murder by a previously convicted violent felon and murder committed in a heinous manner as categories of capital murder effectively abrogates the death penalty for categories in which, across the board, the strongest arguments for death can be made. Defendant is correct in his assessment of the statutory scheme's effect upon these two criminal categories. If the only provable circumstance of the offense or of the character and propensities of the offender pertain to either prior convictions of unrelated violent felonies or heinousness, no evidence of an aggravating circumstance by which the offense was accomplished can be introduced at the guilt phase of the trial, and the jury is required by its oath to return a verdict of second degree murder, without exposing the defendant to the possibility of the death penalty. Even if defendant has correctly assessed the relative demerits of the various murder categories, however, there appear to be sufficient doubts and ramifications growing out of the problem to recommend that it be decided by legislative policy rather than constitutional law. The Texas capital sentencing procedure, which was upheld by the Supreme Court, see, Jurek v. Texas, supra, does not allow the jury, in the trial of a person who has committed an intentional homicide, to return a verdict of capital murder, based solely on either prior convictions or heinousness. Instead, these factors are relegated to the status of circumstances to be considered in imposing sentence. The Supreme Court decision is not dispositive of this case, however, because the precise arguments made here apparently were not presented in the high court. Nevertheless, in our opinion the exclusion of the two classes of murder from capital crime status does not offend the principles laid down in Furman and its progeny. The exclusion of prior convictions and heinousness as essential elements of capital murder is rationally based on the necessity of preventing the jury from being misled in deciding the question of guilt or innocence by extremely prejudicial evidence or by a highly subjective and vague statutory crime definition. The removal of the two categories of murders from capital offenses does not appear in any way to increase the risk that the death penalty would be imposed on a capriciously selected group of offenders, or to frustrate the requirement that the decision to impose it must be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant. See, Gregg v. Georgia, 428 U.S. at 199, 96 S.Ct. 2909.
*874 For the reasons assigned, the judgment of the trial court is set aside, the statutes pertaining to first degree murder, second degree murder and capital sentences, as construed herein, are upheld against the instant constitutional attacks, and this case is remanded for further proceedings consistent with the views expressed in this opinion.
SUMMERS, J., dissents.
PER CURIAM.
We granted a limited rehearing in this case to consider an oversight in our original opinion. Defendant contends that in addition to La.C.Cr.P. Art. 905.4(c) and (g), that we also should have declared that Art. 905.4(f) is to be excluded from the first degree murder definition. Upon further reflection, we conclude that he is correct in arguing that the rationale of our original opinion requires this result. Art. 905.4(f) is directed to a determination of the character and propensities of the offender, i. e. whether the offender at the time of the offense was imprisoned after sentence for the commission of an unrelated forcible felony. It does not focus on aggravating circumstances with which the killing is accomplished. Art. 905.4(f), therefore, is to be distinguished from the elements of capital crime definitions approved in Jurek v. Texas, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976), such as murder committed while escaping from a prison, or murder of a prison employee by an inmate.
Accordingly, we conclude that the legislature did not intend to incorporate by reference Article 905.4(f) as part of the first degree murder definition, and our original opinion is amended in order to declare that Article 905.4(f) is excluded from the first degree murder definition.
For the reasons assigned, our original opinion and decree, as amended, are reinstated, reserving unto the State the right to apply for a rehearing with respect to the amendment only.
SUMMERS, J., dissents.
NOTES
[1] La. R.S. 14:30.1(A); the other lesser included offense is manslaughter, La. R.S. 14:31. La. C.Cr.P. art. 814(A)(1).
[2] La. C.Cr.P. art. 905.3.
[3] La. C.Cr.P. art. 905.3. La. C.Cr.P. art. 905.5 provides:

"The following shall be considered mitigating circumstances:
"(a) The offender has no significant prior history of criminal activity;
(b) The offense was committed while the offender was under the influence of extreme mental or emotional disturbance;
(c) The offense was committed while the offender was under the influence or under the domination of another person;
(d) The offense was committed under circumstances which the offender reasonably believed to provide a moral justification or extenuation for his conduct;
(e) At the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease or defect or intoxication;
(f) The youth of the offender at the time of the offense;
(g) The offender was a principal whose participation was relatively minor;
(h) Any other relevant mitigating circumstance."
[4] La. C.Cr.P. art. 905.7.
[5] La. C.Cr.P. art. 905.9.
[6] La. Supreme Court Rules, rule XXVIII(2), (3) and Appendix B.
[7] La. C.Cr.P. art. 905.9; La. Supreme Court Rules, rule XXVIII(l).
[8] La. R.S. 14:30.
[9] La. C.Cr.P. arts. 905, 905.3, 905.6.
[10] While it is true that criminal laws ordinarily should be literally construed, this rule is not to be applied with such unreasonable technicality as to defeat the purpose of all rules of statutory construction, which purpose is to ascertain and enforce the true meaning and intent of the statute. State v. Bonner, 193 La. 402, 190 So. 626 (1939). The history of the legislation, as well as other statutes in pari materia, may weigh heavily upon the issue of the meaning to be given a criminal statute. State v. Jewell, 345 So.2d 1166 (La.1977); State v. Davis, 208 La. 954, 23 So.2d 801 (1945); see, Sutherland, Statutes and Statutory Construction, § 59.08 (Sands ed. 1974).

As defendant is forced to acknowledge, the definition of a lesser offense by reference to the definition of a more serious crime is not unknown to Louisiana criminal law. For example, simple burglary, La.R.S. 14:62, is defined as the unauthorized entering of any dwelling, vehicle, watercraft, or other structure, movable or immovable, with the intent to commit a felony or theft therein, other than as set forth in La.R.S. 14:60, the aggravated burglary definition.
[11] Defendant also argues that the first degree murder statute imposes a lesser burden on the state with regard to proof of specific intent, than does the second degree murder statute because the latter requires specific intent to kill whereas capital murder includes either specific intent to kill or to inflict great bodily harm. The defendant has ignored the full text of the second degree murder statute's requirement of specific intent, viz., "a specific intent to kill, under circumstances that would be first degree murder under Article 30 . . . ." Although the second degree murder definition does not specifically include a homicide with a specific intent to inflict great bodily harm, this conduct is reasonably encompassed within "[t]he killing of a human being . . . under circumstances that would be first degree murder under Article 30 . . . ." La. R.S. 14:30.1(B).
[12] The potential for abuse is great in all cases where material objects, e. g., morgue photographs, bloody clothing, and weapons are exhibited to the jury. The sight of deadly weapons and cruel injuries tends to overwhelm reason and to associate the accused with the atrocity without sufficient evidence. 4 Wigmore, Evidence, § 1157 (Chadbourne rev. ed. 1972); State v. Gilmore, 332 So.2d 789 (La. 1976). More safeguards are needed in capital cases, rather than exacerbation of the potential for abuse by making the heinous manner in which the offense was committed an essential element of the crime.
[13] La. Const.1974, Art. I, §§ 2, 13, 16.
[14] State v. Green GMC Van, 354 So.2d 479 (La.1977); State v. Johnson, 343 So.2d 705 (La. 1977).