375 So.2d 641 (1979)
STATE of Louisiana
v.
Melvin D. FORD.
No. 64184.
Supreme Court of Louisiana.
September 4, 1979.
On Rehearing October 19, 1979.
Frank G. DeSalvo, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
BLANCHE, Justice.
Defendant, Melvin D. Ford, was charged by Grand Jury Indictment with the January 6, 1978 first degree murder of Robert Reynolds in violation of LSA-R.S. 14:30. Upon trial by a twelve person jury, defendant was found, by a unanimous verdict, guilty of second degree murder. He was subsequently sentenced to life imprisonment at hard labor without parole, probation or suspension of sentence for 40 years.
Before the trial court, defendant specified nine assignments of error, all of which have been argued in briefs submitted to this Court. We address in this opinion only one assignment of error, Assignment 1, as meriting discussion. For the benefit of the parties, we attach hereto an Appendix, a discussion of the remaining assignments which we designate as "Not for Publication".
Defendant contends that it was error to charge him with first degree murder by alleging as the sole aggravating circumstance that "the offense was committed in a heinous, atrocious or cruel manner". Through this assignment of error, the defendant raises a number of objections. First, he alleges that his prosecution for first degree murder where the aggravating circumstance relied upon is the heinous, atrocious or cruel manner of the offense *642 [905.4(g)] is unconstitutional in the light of this Court's decision in State v. Payton, 361 So.2d 866 (La.1978). He claims that the prosecution's allegation of this aggravating circumstance is unconstitutionally vague, as it does not adequately define the actions prohibited. LSA-R.S. 14:30 defines first degree murder as "the killing of a human being when the offender has specific intent to kill or to inflict great bodily harm." Second degree murder, defined by LSA-R.S. 14:30.1, has traditionally provided the Louisiana definition of felony murder, or murder committed during the perpetration of statutorily enumerated felonies, even without the intent to kill. In 1977, however, the legislature included within the definition of second degree murder "[t]he killing of a human being when the offender has a specific intent to kill, under the circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure."[1] Thus, under this statutory scheme, in effect at the time the defendant allegedly committed murder on January 5, 1978, unaggravated specific intent murder appeared punishable under both the first and second degree murder statutes.
In State v. Payton, supra, this Court discussed the constitutionality of the first and second degree murder scheme noted above and determined that the intent of the legislature in passing the new specific intent definition of second degree murder was to take from the definition of first degree murder those specific intent homicides unaccompanied by aggravating circumstances, making those homicides second degree murder. Thus, first degree murder, according to our interpretation of the statutory scheme, included those specific intent murders accomplished in a manner designated by the legislature in the Code of Criminal Procedure, Art. 905.4 to constitute aggravating circumstances during the commission of the offense. However, we excepted from the definition of first degree murder previous convictions of unrelated crimes, Art. 905.4(c), and further excluded Art. 905.4(g) where the offense was committed in an "especially heinous, atrocious or cruel manner" because it endangered the fair determination by the jury of a great many murder prosecutions. As to this circumstance, we stated:
". . . The potential for abuse in making heinousness, atrociousness, or cruelty an element of the offense is both readily apparent and virtually unlimited. Prosecuting attorneys would be encouraged, if not compelled, by such rule to introduce each and every gruesome photograph and to elicit repetitively from State witnesses lengthy accounts of all grisly details related to the crime, regardless of the prejudicial effect upon the jury, as a legitimate effort to prove the heinous manner in which the crime was committed. There is great danger that the jury would be influenced improperly by such evidence in its determination of whether the defendant committed the offense, a question which fundamental fairness demands must be decided only upon relevant and trustworthy evidence."
We also held that although the question of whether the crime was committed in an especially heinous, atrocious or cruel manner may be an acceptable factor to be considered for purposes of sentencing, the term was too vague to serve as a constitutionally adequate element within the definition of a criminal offense. Finally, on rehearing, we also concluded that Article 905.4(f) should be excluded from the definition, which article is directed to the character and propensities of the offender, i. e., whether the offender at the time of the offense was imprisoned after sentence for the commission of an unrelated forcible felony. Obviously, this did not focus on aggravating circumstances with which the killing is accomplished.
Defendant's argument that he was prejudiced by the prosecution under an unconstitutional statute is without merit. Preliminarily, we observe that the defendant *643 could not on the guilt portion of the trial have successfully excluded evidence surrounding the manner in which the victim was killed, because this evidence was part of the res gestae. The issues of whether the crime of first degree murder as charged was so vague as to inadequately inform defendant of the offense charged, or whether by submitting evidence of the "heinous, atrocious or cruel manner" in which the murder was accomplished prejudiced the defendant on the guilt portion of the trial and violated rules of fundamental fairness, all as to deprive him of due process of law, were all resolved when the jury rejected the verdict against defendant for the crime as charged and found him guilty of second degree murder, a responsive verdict.
In Payton, we found no constitutional infirmity in the second degree murder statute, which was defined as an unaggravated specific intent homicide. Thus, on the merits, the jury under its verdict rejected the state's indictment of defendant which required proof of an aggravating circumstance that we found constitutionally impermissive in Payton; the defendant's objection therefore raises no prejudicial error. Neither could defendant's defense have been prejudiced since in preparation for the first degree murder charge, he was necessarily required to prepare a defense to the lesser included offenses for which he may be found guilty. Accordingly, defendant did not suffer the harm noted by us in Payton. Furthermore, should we reverse the conviction, the defendant would merely be re-tried for second degree murder, the crime of which he was convicted.
For the above reasons, the conviction and sentence are affirmed.
AFFIRMED.

On Application for Rehearing
PER CURIAM.
On rehearing, it was called to our attention that we did not consider defendant's supplemental assignment of error filed nine days before argument. This assignment relates to the failure of the court to include in its written charge to the jury a charge on intoxication.
We consider this assignment herein.
The record indicates that at the close of the evidence and before argument, both the state and defense submitted special jury charges on intoxication. The trial court's general charge to the jury, which had been prepared prior to trial, was in writing and filed into the record but did not include a charge on intoxication. Neither does the transcript contain the judge's charge to the jury, and for this reason, it is impossible to determine how the judge actually charged the jury on the subject of intoxication.
It does appear from a colloquy in the record between the court and counsel that the court, in fact, gave the state's requested charge on the issue of intoxication.
The state, in its supplemental brief, claims that the judge charged the jury in accordance with its special charge, which in essence parallels R.S. 14:15 and stated the times that intoxication or a drugged condition is material at trial.
The defendant, in his supplemental brief, admits that the court did give a charge on intoxication, but it was not reduced to writing. Thus, it appears that the complaint does not relate to the substance of the trial judge's charge on this issue but only to the fact that it was not reduced to writing. Code of Criminal Procedure art. 801 requires the court to reduce its charge to writing if it is requested to do so by either defendant or the state prior to the swearing in of the first witness at the trial on the merits.[1]
It is obvious that the trial judge had already prepared his written charge at the time he was considering giving the special charge which had been presented to him by *644 the district attorney and defense counsel at the close of the evidence and just prior to argument. After making the decision to give a special charge on intoxication, the following colloquy appears:
BY MR. REED:
I'd like a copy of your charge so I could go over it before you give it in case I have any objections.
BY THE COURT:
Yes, sir, we have a copy ready for you now of my charges.
BY MR. REED:
Thank you.
We are of the opinion that in the absence of a request by counsel, C.Cr.P. art. 801 has no application to special charges which are requested after trial on the merits has been completed. Otherwise, there would be no purpose in the requirement that the charge be in writing if requested prior to the swearing in of the first witness.
Additionally, we believe that the defendant waived any right he may have had to insist that the special charge on intoxication be reduced to writing. After having convinced the court to give the special charge, counsel then requested a copy of the court's general charge in order that he might read it prior to its delivery to determine if he had any objection thereto. Thus, in one breath he asks for a special charge and in the next, for the general charge, knowing full well that his special charge could not have been reduced to writing. Under these circumstances, it is difficult to believe that counsel for defendant really expected the court to delay the proceedings while a special charge on intoxication was typed up and included in the judge's previously prepared general charge.
Accordingly, we find this assignment of error in without merit and affirm the conviction and sentence of the defendant.
NOTES
[1] La. Act No. 121 of 1977, Sec. 1.
[1] "The court shall charge the jury after the presentation of all evidence and arguments. The court shall reduce its charge to writing if it is requested to do so by either a defendant or the state prior to the swearing of the first witness at the trial on the merits. The court's written charge shall be read to the jury. The court shall deliver a copy thereof to the defendant and to the state prior to reading it to the jury." C.Cr.P. art. 801.