388 So.2d 688 (1980)
STATE of Louisiana
v.
Paul HARTMAN.
No. 66785.
Supreme Court of Louisiana.
September 3, 1980.
Rehearing Denied October 6, 1980.
*690 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, James D. Maxwell, Asst. Dist. Attys., for plaintiff-appellee.
Indigent Defender Program, Jack Quarles, Jr., George P. Vedros, Gretna, for defendant-appellant.
DIXON, Chief Justice.
Paul Hartman was charged with the crime of first degree murder, R.S. 14:30, convicted as charged, and sentenced to life imprisonment. Defendant appeals his conviction and sentence, relying on fourteen assignments of error, five of which he has neither argued nor briefed. Finding no reversible error in defendant's assignments of error, we affirm his conviction and sentence.
On December 4, 1978 the defendant stopped at the Tiki Lounge in Jefferson Parish to talk to his ex-girlfriend, Linda Creppel. When he entered the lounge, he saw Ms. Creppel dancing with Johnny Schwartz. The defendant, angered by his observation, started an argument with Ms. Creppel and Schwartz. After hostile words were exchanged, the defendant went to get his knife from his truck and returned to the bar. The argument continued and an altercation ensued between the defendant and Schwartz. During the struggle, the defendant fatally stabbed Schwartz.

*691 Assignment of Error No. 2

In this assignment the defendant urges as error the challenge for cause granted by the trial court against a juror voicing an inability to impose the death penalty.
C.Cr.P. 798(2) provides:
"It is good cause for challenge on the part of the state, but not on the part of the defendant, that:
. . . . .
(2) The juror tendered in a capital case who has conscientious scruples against the infliction of capital punishment and makes it unmistakably clear (a) that he would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before him, or (b) that his attitude toward the death penalty would prevent him from making an impartial decision as to the defendant's guilt;
. . ."
In Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), the United States Supreme Court held that a sentence of death cannot be carried out if the jury that recommended it was chosen by excluding veniremen for cause simply because they voiced general objection to the death penalty or expressed conscientious or religious scruples against its infliction. The defendant asserts that the exclusion of prospective juror Vivian Brown was contrary to the standard of Witherspoon and C.Cr.P. 798(2).
In response to an inquiry by the prosecuting attorney as to whether she had scruples against capital punishment to the point where she would under no circumstances be able to impose that penalty even if it were justified by the facts, Ms. Brown said, "No, I couldn't, I couldn't. I couldn't vote that." When Ms. Brown was further questioned by the judge as to whether she could not under any circumstances find a death penalty for anyone, she answered that she could not.
The record clearly indicates that Ms. Brown was properly excused for cause. Ms. Brown did more than voice a general objection or conscientious or religious scruples against the death penalty. She was properly excused under C.Cr.P. 798(2) and Witherspoon.
Moreover, it should be noted that the jury did not recommend and the trial court did not impose the death penalty. The defendant does not have a valid complaint of a Witherspoon violation. State v. George, 371 So.2d 762 (La.1979); State v. Drew, 360 So.2d 500 (La.1978).
This assignment is without merit.

Assignment of Error No. 4.
By this assignment the defendant contends that the trial court erred in ruling that defense counsel was not allowed to question witnesses on issues crucial to establishing the defendant's state of mind at the time of the offense. During the trial the defense counsel attempted to question two witnesses concerning the reputation of the Tiki Lounge. The court sustained the state's objection on the grounds that the questions asked by the defense counsel were irrelevant. It is the defendant's contention that the stabbing was done in self-defense and his fear of the victim would be established in part by showing the reputation of the bar where the altercation occurred.
This court has recognized that, under certain circumstances, a defendant may introduce evidence which would show a reasonable apprehension of danger in order to justify his conduct. State v. Gomez, 365 So.2d 1313 (La.1979). However, such evidence generally involves the victim's reputation as to his dangerous character and not the reputation of the place where the crime occurred. See R.S. 15:482.
R.S. 15:441 defines relevant evidence as:
"Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent. Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible."
*692 In the present case the defendant was not attempting to show the victim's reputation. Furthermore, the reputation of the Tiki Lounge had no bearing on the defendant's claim of self-defense. The evidence sought to be introduced was not relevant to the defendant's state of mind. Hence, the trial judge properly sustained the state's objections to the testimony concerning the reputation of the lounge.
There is no merit to this assignment.

Assignment of Error No. 8
The defense urges prejudicial error in the trial court's decision to admit six allegedly gruesome photographs into evidence. The photographs of the victim show the seven wounds, which had been partially sutured after the stabbing. The defendant argues that the photographs did not have any relevancy and merely prejudiced the jury.
The test of admissibility of allegedly gruesome photographs is whether their probative value outweighs their potential prejudicial effect on the jury. State v. Vernon, 385 So.2d 200 (La.1980); State v. Unger, 362 So.2d 1095 (La.1980). Photographs are generally admissible if they illustrate any fact, shed any light upon an issue in the case, or are relevant to describe the person, thing, or place depicted. State v. Valentine, 364 So.2d 595 (La.1978).
The photographs at issue here show the location, number and severity of the wounds the victim sustained. The evidence is relevant to rebut the defendant's contention that he acted in self-defense. State v. Myles, 389 So.2d 12 (La.1979); State v. Williams, 343 So.2d 1026 (La.1977).
We conclude that the probative value was not outweighed by the potential prejudicial effect the photographs had on the jury. Therefore, the trial court did not err in admitting the photographs.
This assignment of error lacks merit.

Assignment of Error No. 9
The defendant argues that the trial court erred in allowing the state to elicit testimony from a witness concerning the violent nature of the defendant.
R.S. 15:481 provides that:
"The state is permitted to introduce testimony of the bad character of the accused only in rebuttal of the evidence introduced by him to show good character."
At trial there was no evidence presented by the defendant to show his good character. During cross-examination of Ms. Creppel, defendant's ex-girlfriend, the prosecutor inquired whether the cause of their break up was due to the defendant's temper. Ms. Creppel replied: "He wasn't violent. He wasn't that violent. He slapped me when I deserved it sometimes. He took it out on the furniture most of the time when he got upset."
The defense attorney's objection was overruled by the trial court. Under R.S. 15:481 the question was improper since the defendant had not placed his character at issue by offering evidence of good character. However, the answer given by Ms. Creppel indicated that the defendant was not "that violent." Although the question should not have been permitted, the import of the testimony did not prejudice the defendant.
This assignment has no merit.

Assignment of Error No. 11
In this assignment the defendant contends that the trial court erred in ruling that the state would be allowed to impeach the defendant by using a 1960 conviction if he chose to testify at trial. Because of this ruling the defendant claims that he did not testify.
R.S. 15:495 provides:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, *693 and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
The defendant contends that because the conviction was almost twenty years old, the conviction was stale and its prejudicial effect outweighed its probative value. Louisiana jurisprudence has not limited impeachment testimony to recent crimes, nor to crimes indicative of the credibility of the testifying defendant. State v. Prather, 290 So.2d 840 (La.1974); State v. Rossi, 273 So.2d 265 (La.1973). Therefore, the ruling of the trial court was not erroneous.
There is no merit to this assignment.

Assignment of Error No. 12
By this assignment the defendant contends that it was error for the trial court to deny the defendant an opportunity to elicit testimony as to the nature of threats which were made against him by the victim. More specifically the defendant argues that the trial court erred in not allowing the witnesses to repeat the threatening words used by the victim. The trial court sustained the state's objections on the basis of hearsay.
The defendant submits that such testimony should have been allowed into evidence as res gestae under R.S. 15:447, which provides:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
This court has held that testimony concerning threats made against the defendant by the victim is not admissible under the theory of res gestae unless there is compliance with R.S. 15:482. State v. Walker, 296 So.2d 310 (La.1974). R.S. 15:482 provides:
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
An overt act in this context means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do great bodily harm. State v. Ford, 368 So.2d 1074 (La. 1979); State v. James, 339 So.2d 741 (La. 1976).
Defendant's own description of the fatal encounter, given to police shortly after the killing, was introduced by both the state and the defense, and was in substantial agreement with other testimony. Defendant entered the lounge to talk to Linda Creppel, saw her dancing with the victim, and voiced his disapproval. These as well as the bartender, the manager of the lounge, and the mother of Linda, discussed the situation. The victim asked the defendant if he wanted to die and threatened him with physical violence. Defendant, impressed with the victim's size, and apparently by the fact that the other occupants of the bar were not sympathetic to his cause, cooled down and left the bar, going to his truck parked outside. There he obtained a knife and put it in his jacket pocket ("I felt safer having it with me."). The knife was a hunting knife, six or seven inches long. Defendant reentered the bar and told Linda she had made her choice. (Here, some testimony had defendant refer to the victim as a "son of a bitch.") The victim then attacked defendant, pushing him against a wall telephone and grappling him to the floor. Defendant claimed that he was able to get the knife from his pocket after being hit several times and "blindly started sticking it at him." Of the seven wounds suffered by the victim, the fatal one was a stab wound near the center line of his chest.
On direct examination the witness Carol Trotter testified that the victim told defendant: "Look, I could hurt you bad." This assignment is based on rulings made *694 during the cross-examination of Trotter. The trial judge instructed the witness not to relate what the victim had said during the altercation.
The issue was never clearly drawn at the trial. Defendant never informed the court that he sought to elicit testimony that the victim was the aggressor, and that, when attacked, defendant was justified in believing deadly force was necessary in order to repel the attack. The trial judge seemed to rule only that the witness could not relate the exact words, a ruling in which defense counsel acquiesced. When the witness was asked if she heard a threat, she seemed not to understand what a "threat" was. The cross-examination finally concluded with a vague affirmative answer by the witness that the victim threatened the defendant "in what he could do physically, or strongly."
Defendant here was not deprived of relevant and helpful testimony by an erroneous ruling of the trial judge. On direct examination the witness quoted the words of the victim. On cross-examination she was confused, but affirmed that the victim threatened the defendant.
The assignment is without merit.

Assignment of Error No. 13
In this assignment the defendant urges that there was a total lack of evidence to support his conviction of first degree murder in that the state failed to prove specific intent to kill or to inflict great bodily harm, and that the killing was not perpetrated in self-defense. The defendant contends that the trial court erred in denying his motion for a new trial.
In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the United States Supreme Court rejected and overruled the previous "no evidence" criterion for federal habeas review of state convictions and held that federal due process protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt. The court set forth the following test:
"... the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt...." 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.
Here there was sufficient proof that the killing was committed with the specific intent to inflict great bodily harm and was not a justifiable homicide committed in self-defense. After an argument with the victim, who had been dancing with defendant's former girlfriend, defendant left the bar, armed himself with a hunting knife, and returned to continue the argument. In his conversation with Linda, defendant referred to the victim as a "son of a bitch." The victim then pushed defendant against a wall telephone and grappled him to the floor.
According to the testimony of the pathologist, four of the wounds (including the fatal one) were in the chest; all of these were less than an inch deep. One wound was in the abdomen, near the appendix. The victim's face was slashed from his mouth to his ear. The seventh wound was a slash which severed the left biceps muscle. A reasonable juror would be justified in believing, beyond a reasonable doubt, that defendant intended to inflict great bodily harm on the victim.
The evidence is also sufficient for the jury to have concluded beyond a reasonable doubt that defendant used unreasonable and unnecessarily deadly force against the victim. R.S. 14:20(1). The record goes no further than the evidence here recounted, except for a disparity in the size of the men, to indicate that the defendant was in great danger of severe injury before he resorted to the knife in his pocket.
This assignment has no merit.

Assignment of Error No. 14
By this assignment the defendant urges that the trial court committed error in instructing *695 the jury as to the definition of first degree murder. He also contends that the sentence of life imprisonment is excessive.
The trial court instructed the jury that first degree murder was "the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm." The defendant contends that the jury should have been instructed that an aggravating circumstance must have been present in order to find the defendant guilty of first degree murder.
For a time prior to the commission of this offense, the definition of first degree murder was expanded by the provisions of the second degree murder statute[1] which by implication redefined first degree murder as a specific intent homicide accomplished with a statutorily prescribed aggravating circumstance. See State v. Payton, 361 So.2d 866 (La.1978). At that time the statutory scheme made the presence of at least one aggravating circumstance an essential element of first degree murder. After Payton was decided, however, the legislature again amended R.S. 14:30.1. Acts 1978, No. 796 § 1. Thereafter unaggravated specific intent killings were removed from the scope of the second degree murder statute and were recast within the definition of first degree murder. State v. Perkins, 375 So.2d 1179 (La.1979).
R.S. 14:30 has since been amended to include specified aggravating circumstances in the definition of first degree murder. Acts 1979, No. 74 § 1. The defendant suggests that the 1979 enactment indicates that the legislature intended the first degree murder statute to include the presence of an aggravating circumstance at the time the defendant committed the killing with which he is charged.
On December 4, 1978, when the instant offense occurred, first degree murder did not require the presence of an aggravating circumstance. The trial court's instructions were proper.
The defendant also contends that the sentence of life imprisonment without benefit of parole, probation, or suspension of sentence is excessive under Article 1, § 20 of the 1974 Louisiana Constitution. In determining what is excessive punishment under the Eighth Amendment's prohibition against cruel and unusual punishment, the United States Supreme Court has adopted the standard that a sentence is excessive when it is grossly out of proportion to the severity of the crime. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). This standard has also been adopted by this court in addressing a defendant's claim of excessive punishment. State v. Goode, 380 So.2d 1361 (La.1980).
Under this standard we conclude that the sentence of life imprisonment is not grossly out of proportion to the crime of murder.
There is no merit to this assignment.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
BLANCHE, J., concurs.
MARCUS, J., concurs and assigns reasons.
DENNIS, J., concurs disagreeing with treatment of assignment No. 4.
MARCUS, Justice (concurring).
Whether applying the traditional "no evidence" standard of review or the Jackson standard, there is sufficient evidence to support the conviction.
I respectfully concur.
NOTES
[1] R.S. 14:30.1 provided:

"Second degree murder is:
A. The killing of a human being when the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simple robbery, even though he has no intent to kill; or
B. The killing of a human being when the offender has a specific intent to kill, under circumstances that would be first degree murder under Article 30, but the killing is accomplished without any of the aggravating circumstances listed in Article 905.4 of the Louisiana Code of Criminal Procedure.