391 So.2d 1120 (1980)
STATE of Louisiana
v.
Jessie McMAHON.
No. 67531.
Supreme Court of Louisiana.
November 10, 1980.
Rehearing Denied December 15, 1980.
*1122 John B. Knight, Jr., Winnsboro, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Lowen B. Loftin, Dist. Atty., E. Rudolph McIntyre, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Chief Justice.
The defendant was charged with second degree murder in connection with the fatal shooting of her husband. The jury returned a verdict of guilty of manslaughter, and the trial judge sentenced defendant to fifteen years at hard labor. Ten specifications of error are urged on this appeal.
On the afternoon of August 26, 1978 the defendant and two of her friends, Peggy Spears and Rosemary McMahon, attended a birthday party for a six year old child. The group returned to the defendant's home that evening, and retired to a bedroom to watch television and prepare themselves to go out again later that night. Shortly thereafter Robert McMahon, the defendant's husband, returned home in the company of Verdastine Harris, his niece, and her husband Earl Harris. When the defendant's husband learned of her plans for that evening, he told her that he did not want her to leave the house. The testimony indicates that the defendant retorted "she was going out somewhere if she had to go out and sit on the front steps." Robert McMahon then left the bedroom. Rosemary McMahon and Verdastine Harris, who remained in the bedroom, testified that they saw the defendant transfer a gun to her purse at this time. Verdastine Harris and Peggy Spears then left the bedroom as well. Moments later Robert McMahon returned to the bedroom with a telephone, and Rosemary McMahon began to speak to the caller. When her conversation was completed she walked out of the room, leaving the defendant and her husband alone together. A single shot was heard, and the four witnesses rushed into the bedroom in time to see the victim, Robert McMahon, slumping across the bed. The defendant was standing at the foot of the bed with a gun in her hand. Earl Harris approached the defendant and asked her for the gun. She is said to have replied, "Stand back or I'll shoot you too." Nevertheless, Harris continued to approach the defendant and eventually recovered the weapon after wrestling her to the bed. A passing motorist was flagged down and the victim was taken to a hospital emergency room where he died thirty to forty-five minutes later.

Assignments of Error Nos. 1, 6, 7, 9 and 10
The first set of errors assigned by defendant involves the application and constitutionality of the second degree murder statute in effect at the time the homicide occurred.[1] The pertinent part of R.S. 14:30.1 essentially provided that second degree murder was the killing of a human being with specific intent but without the aggravating circumstances listed in C.Cr.P. 905.4. The argument is made that several of the enumerated aggravating circumstances are so vague and indefinite as to *1123 render the entire statute unconstitutional. As a general rule a party who has not been adversely affected by a law has no standing to challenge its constitutionality. State v. Brown, 389 So.2d 48 (La.1980). Although the defendant in this case was convicted of manslaughter rather than second degree murder, the two offenses are interrelated, since manslaughter is defined in part as a homicide "which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder) ..." R.S.14:31. If the second degree murder statute is constitutionally defective, defendant conceivably could claim to have been aggrieved by it, despite her conviction for manslaughter.
In State v. Payton, 361 So.2d 866 (La.1978), this court held certain provisions of C.Cr.P. 905.4 to be unconstitutional in connection with the first degree murder statute; however, the validity of the remaining provisions was left intact. No constitutional infirmity was found with the second degree murder statute, under which the aggravating circumstances must be absent. In State v. Ford, 375 So.2d 641 (La. 1979), the defendant was charged with first degree murder but was convicted of second degree murder. The court found that the defendant had not been prejudiced by any constitutional defect in the first degree murder statute, since the jury's verdict necessarily rejected the presence of any aggravating circumstances. In the present case, the constitutional merit of the first degree murder statute is not at issue; and, because the second degree murder statute required the absence rather than the presence of aggravating elements, it is unnecessary to discuss any possible vagueness in those elements.
Defendant also complains that the trial judge committed error by failing to instruct the jury as to all the elements of second degree murder. Defendant's contention is that the jury should have been informed of the aggravating circumstances listed in C.Cr.P. 905.4, presumably so the jury could determine that these circumstances were in fact absent. This contention is without merit. No conceivable prejudice to the defendant could have resulted through the failure to charge the jury to ascertain whether the homicide was not aggravated. In any event, defendant cannot claim to be aggrieved by the omission, since she was convicted of the lesser offense of manslaughter rather than second degree murder.
These assignments of error are without merit.

Assignments of Error Nos. 2 and 10
The defendant's trial had originally been scheduled for April 2, 1979. Due to a backlog, the state was unable to try the case by the time the petit jury venire was dismissed on April 6. The state did not move for a continuance, but was later granted an order scheduling defendant's trial for July 23, 1979.
The defendant was not in custody during the three and one-half month interim and never asserted her right to a speedy trial during that time. La.Const. Art. 1 § 16; C.Cr.P. 701. No complaint was made of the state's delay until the date of trial. Under these circumstances there was no abridgement of the right to a speedy trial. Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Reaves, 376 So.2d 136 (La.1979); State v. Alfred, 337 So.2d 1049 (La.1976). To the contrary, it would appear that the defendant acquiesced in the delay. State v. Overton, 337 So.2d 1058 (La.1976).
These assignments lack merit.

Assignments of Error Nos. 4 and 10
During trial, Willie Earl McMahon (the son of the victim and the husband of Rosemary McMahon) was called to testify by the state. He recounted an incident which occurred in the home of the victim and the defendant on August 25, 1978. Defendant and the victim were arguing, and defendant told the victim, Robert McMahon, "that she was gonna kill Robert about Elaine." The following exchange then took place:
"Q Did you see Jessie after Robert left?
*1124 A Yeah, she stayed there for a while and then she took her pistol and put it in her purse and left out and the next morning Peggy told me that she went looking for him to kill him." (Emphasis added).
Defense counsel immediately objected to the inadmissible hearsay nature of this testimony. R.S. 15:434. Pursuant to the objection, the trial judge admonished the jury to "disregard the last comment that he made." C.Cr.P. 771. Defense counsel complained that the admonishment could not cure the prejudice caused by the allegation that defendant had intended to kill her husband on a prior occasion, and requested a mistrial. C.Cr.P. 775. While it is admitted that the remark was entirely gratuitous, and not solicited or expected by the prosecution, it is nevertheless necessary to determine whether this inadmissible testimony might have prejudiced the defendant's right to a fair trial. State v. Foss, 310 So.2d 573 (La.1975).
Willie McMahon's testimony that Peggy [Spears?] told him that defendant went looking for Robert McMahon to kill him was inadmissible hearsay and highly prejudicial. The testimony indicating that defendant had intended to kill her husband on a prior occasion supported the state's contention that the homicide was intended; the strongest argument of the defense was that the shooting was accidental. The hearsay statement, if believed, tended to negate that defense. By returning a manslaughter verdict, the jury obviously rejected the defense that the shooting was accidental. On its face, the argument that the testimony incurably prejudiced the defendant's case is sound.
The admission of hearsay testimony may infringe upon the right of an accused under the Sixth Amendment "to confront the witnesses against him." See also La. Const. Art. 1 § 16 (1974). In this case, however, Peggy Spears actually testified for the defendant, and denied both making the statement and hearing defendant threaten the victim. Under these circumstances the hearsay issue does not take on constitutional proportions, since the right of confrontation was not abridged.
Instead, the question here is whether the inadmissible testimony made it "impossible for the defendant to obtain a fair trial" in spite of the admonition, C.Cr.P. 771, 775, and whether the trial judge's refusal to order a mistrial "probably resulted in a miscarriage of justice ..." C.Cr.P. 921; State v. Herman, 304 So.2d 322 (La.1974); State v. Michelli, 301 So.2d 577 (La.1974).
The record as a whole minimizes the damaging nature of the witness' statement. Immediately before the hearsay testimony was given, Willie McMahon testified that he had overheard the defendant telling her husband that she was going to kill him "over Elaine," with whom she suspected he was romantically involved. This threat, which was properly before the jury, constituted evidence of defendant's prior intent to kill her husband. The hearsay testimony merely corroborated the evidence of this prior threat. Immediately after the hearsay statement was made, the trial judge admonished the jury to disregard it. When the conduct constituting error, as here, does not fit within the mandatory mistrial provisions of C.Cr.P. 770, the trial judge is given some discretion to determine whether the defendant was so prejudiced that a fair trial is impossible, or whether the admonition is sufficient to assure a fair trial. C.Cr.P. 771; State v. Domangue, 350 So.2d 599 (La.1977). The court was obviously satisfied that the admonition was adequate. In addition, the alleged declarant, Peggy Spears, who was later called by the defendant to testify, completely denied the truth of Willie McMahon's statement. The defendant herself testified in detail as to the allegedly accidental nature of the shooting, to which there were no eyewitnesses. Under these circumstances we cannot find that the unsolicited hearsay testimony, followed by a prompt admonition from the trial judge, made it impossible for the defendant to receive a fair trial. The remedy of mistrial is not justified when an admonition is sufficient to preserve a defendant's due process rights. State v. Williams, 375 So.2d 364 (La.1979); State v. Wesley, 347 So.2d 217 (La.1977).
*1125 These assignments of error are without merit.

Assignments of Error Nos. 8 and 10
When the jurors retired for deliberations, they had not been instructed as to the number required to reach a verdict. Because second degree murder and manslaughter are necessarily punished by imprisonment at hard labor, ten of twelve jurors are required to concur on the verdict. La.Const. Art. 1 § 17 (1974); C.Cr.P. 782.
The record indicates that the jury was retired at 4:35 p. m. At approximately 7:15 p. m. the jury was recalled to the courtroom to be given the omitted instruction. Defense counsel then moved for a mistrial. The defendant claims to have been prejudiced by the initial omission of the instruction because of the possibility that ten of the twelve jurors may have voted for acquittal but were under the mistaken impression that the verdict had to be unanimous. It is of course impossible to know what transpired during the jury's deliberations.
On the date of trial, defense counsel filed a motion requesting the court to reduce its jury charge to writing and to deliver it to counsel prior to instructing the jury. C.Cr.P. 801. This was done, and counsel raised no objections. When the jury is called back to the courtroom to receive further charges after it has initially retired to deliberate, an objection made at the time the corrective charges are given is timely. State v. Knight, 323 So.2d 765 (La. 1975). Defendant's objection was directed to the initial failure of the trial judge to give the essential instruction, not to the corrective charge. No prejudice has been shown in the delay. Moreover, it is clear that it would have been proper to give the charge at the jury's request. C.Cr.P. 808. We find that the trial judge's inadvertent error in omitting the instruction which was later given did not constitute prejudicial error.
These assignments of error are without merit.

Assignment of Error No. 11
The defendant was sentenced to fifteen years at hard labor. The maximum sentence under the statute is twenty-one years. R.S. 14:31. Defendant contends that this sentence violates her constitutional right to humane treatment in that the sentence is excessive. La.Const. Art. 1 § 20 (1974).
The legislature has provided statutory guidelines to assist the court in determining the proper sentence to be imposed. C.Cr.P. 894.1. The record must reflect that these criteria were adequately considered in imposing sentence. State v. Jones, 386 So.2d 85 (La.1980); State v. Bonanno, 384 So.2d 355 (La.1980); State v. Roussel, 381 So.2d 796 (La.1980); State v. Cox, 369 So.2d 118 (La.1979). At the sentencing hearing, the defendant called three witnesses to testify on her behalf. A presentence investigation report was also filed. C.Cr.P. 875. Of the defendant's three witnesses, two had employed her both before and after the homicide to work in their home. The third, formerly a secretary of the district attorney, hired the defendant after the homicide to work in her home one day a week. All of these witnesses uniformly reported their complete trust of the defendant; all of them testified that they had no reason to believe that defendant had a violent temper or in any way presented a danger to them. The trial judge, who was acquainted with all three of these witnesses, noted that he did not think that they would misrepresent the truth.
However, the trial judge also noted that he had been acquainted with the victim for some twenty-five or twenty-six years:
"... and never knew him to be a violent individual. Not one prone to abusing the female sex. The record shows ... that Robert and Jessie McMahon were left alone and a shot was heard. I think the record shows that no one heard any arguing and that when the first witness arrived, I believe, Jessie McMahon was standing there with a gun in her hand. Life is precious. Death is permanent. Even though Jessie McMahon has a clean *1126 record prior to that time, so did a host of other people who are at the present time serving time in correctional institutions and I am sure that they have not been convicted of anything or had encounters with the law since that time. As the Court stated, death is rather permanent and Mrs. McMahon, you take life rather lightly. And, I know that Robert McMahon was very fond of life. The Court will not contest or even suggest in the future you would be guilty of any similar crimes, but even at that, the Court will take leniency...."
The trial judge, in opposing a fifteen year sentence, apparently believed that a lesser sentence would deprecate the seriousness of the crime. C.Cr.P. 894.1(A)(3). Several mitigating circumstances were properly considered, such as the defendant's lack of a criminal history and the improbability that defendant would commit another crime. C.Cr.P. 894.1(B)(7 and 9). However, the trial judge also negated the presence of one mitigating circumstance (that the defendant may have acted under strong provocation) in spite of the fact that the verdict of manslaughter represents the jury's conclusion that the homicide was committed "in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection." R.S. 14:31. Nevertheless, we find that the judge adequately considered the legislative criteria in imposing a less than maximum sentence.
Moreover, we conclude that the sentence itself is not excessive. In determining what is excessive punishment under the Eighth Amendment's prohibition against cruel and unusual punishment, the United States Supreme Court has ruled that a sentence is excessive when it is grossly out of proportion to the severity of the crime. Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). This standard has been adopted by this court in addressing claims of excessive punishment. State v. Hartman, 388 So.2d 688 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980). The defendant was convicted of deliberately killing a human being. Because she was found to have acted under provocation, her conviction for manslaughter, which carries a less severe punishment than murder. The sentence itself was less than the statutory maximum. Under these circumstances we do not find that the fifteen year sentence was excessive.
This assignment is without merit.
The defendant's conviction and sentence are therefore affirmed.
WATSON, J., concurs.
NOTES
[1] R.S. 14:30.1, as amended by Acts 1977, No. 121, is applicable to this case. The statute was again amended in 1978 by Act 796, but the amended version did not become effective until after the August 26 homicide. La.Const. Art. 3 § 19 (1974).