297 So.2d 181 (1974)
STATE of Louisiana
v.
Donald CORDIER.
No. 54356.
Supreme Court of Louisiana.
June 10, 1974.
Allen C. Hope, Jr., Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
*182 MARCUS, Justice.
Defendant, Donald Cordier, was charged by bill of information with aggravated crime against nature in violation of R.S. 14:89.1. He was convicted after trial by jury and sentenced to serve eight years at hard labor. On appeal, defendant relies upon eight bills of exceptions to obtain a reversal of his conviction and sentence.
Sterling Weston, an inmate of the Orleans Parish Prison, complained to Captain Theodore Delahoussaye that he had been the victim of an aggravated crime against nature committed by defendant, Donald Cordier, on June 21, 1973. Weston stated that Cordier, by threat of the use of a homemade knife, forced him to submit to the sexual assault. An examination by the coroner revealed the presence of seminal fluid in the anus of Weston. Cordier was charged with violation of R.S. 14:89.1.
The following information unsuccessfully sought in an application for a bill of particulars and a prayer for oyer is the subject of Bills of Exceptions Nos. 1, 2 and 3:
(1) the names of all prisoners confined on the tier at the time of the alleged crime; and the numbers of the cells in which they were confined;
(2) the name of the captain, hallboy, tier guard, and any other person of authority on the tier at the time of the alleged crime; and
(3) all oral statements and admissions made by the defendant either before or after arrest.
The trial judge properly denied all of the above requested information under the existing law in Louisiana. The requests in (1) and (2) fall within the wellestablished rule that the State is not required to disclose the evidence by which it expects to prove its case nor is it required to furnish the defense with a list of its witnesses. State v. Barksdale, 247 La. 198, 170 So.2d 374 (1965), cert. den., 382 U.S. 921, 86 S.Ct. 297, 15 L.Ed.2d 236; State v. Hunter, 250 La. 295, 195 So.2d 273 (1967); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Bailey, 261 La. 831, 261 So.2d 583 (1972). The request for oral statements and admissions (3) was also properly denied. The rulings in State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945) and State v. Hall, 253 La. 425, 218 So.2d 320 (1969) allowing pre-trial inspection of written confessions and video-tape recordings have never been extended to oral statements and admissions.
Defendant further urges that he was entitled to the requested information which forms the substance of these bills under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The argument anent the applicability of Brady to the instant case is answered in State v. Gladden, 260 La. 735, 257 So.2d 388 (1972), wherein we stated:
"Aside from the obvious fact that there has been no showing that any portion of the reports contained any evidence favorable to the defendant, we do not find the Brady Case applicable here. That case stands for the proposition that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
"Underlying this holding is the principle that the business of the government is not to achieve victory but to establish justice. The principle is expressed in the idea that the government wins its point when justice is done in its courts.
"Implicit in the Brady holding is the requirement that there be `known' perjured testimony used by the State or a deliberate deception; or that the State, *183 although not soliciting false evidence, allows it to go uncorrected when it appears."
Additionally, as the State points out, there were no eyewitnesses to the crime available and no confession of any kind was offered by the prosecution. The names and information thus sought were not "material" or "favorable" to the accused.
Bills of Exceptions Nos. 1, 2 and 3 are without merit.
Bills of Exceptions Nos. 4 and 5 (consolidated for argument) concern the testimony elicited from Sterling Weston, the alleged victim, relating to a stab wound on his leg previously inflicted by defendant.
Bill No. 4 was reserved to the overruling of defense objection to the questioning of Weston as to where defendant had stabbed him. Next, when Weston was asked: "Did he make that stab wound with that home made knife you testified to?" objection was made by defense counsel which was overruled (Bill of Exceptions No. 5). The objection in the record is that the question was leading.
The trial judge in his per curiam to Bill No. 4 states:
"This Bill of Exceptions was reversed when the Court overruled defense counsel's objection to the testimony of Sterling Weston, the alleged victim, that the defendant, Donald Cordier, some two days prior to the alleged offense for which he was on trial, had stabbed Weston in the leg with a homemade knife.
"The defendant, Donald Cordier, was on trial for the offense of aggravated crime against nature occurring on the 21st of June, 1973, while both the defendant and the victim, Sterling Weston, were confined in the Parish Prison. The testimony of the victim, Sterling Weston, revealed that on the day of the offense the defendant had approached him with a homemade knife and through threats and intimidation forced him to have sexual relations with him. One of the elements necessary to prove an aggravated crime against nature is that the victim was prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution. The testimony elicited by the prosecutor showed that the defendant had stabbed the victim with a knife on a previous occasion which was not very distant in time from the alleged date of the offense for which he was on trial. Therefore, the Court was of the opinion that this testimony revealed a threat to the victim of great and immediate bodily harm and further revealed that the defendant had the apparent power to execute that threat.
"It is this Court's humble opinion that this line of testimony was relevant to show one of the necessary elements of this offense and that it fell within the res gestae."
The per curiam to Bill of Exceptions No. 5 recites:
"This Bill of Exceptions was taken upon an objection to a question propounded by the assistant district attorney, the objection being that the question was leading.
"The Court overruled the objection and allowed the question on the basis that the witness had just previously testified that the defendant had stabbed him in the leg and at the time of the objection was in the process of showing the stab wound to the jury. The Court felt that the question was a reiteration of previous testimony given by the witness and was to supplement the demonstration of the stab wound to the jury. Therefore, the Court felt that this question, even though it may have been leading, was not prejudicial to the defendant."
The trial court correctly ruled that the testimony of Weston relating to the *184 stab wound was relevant and admissible. While defense counsel's objection to evidence of a prior offense had been previously sustained, he failed to object to the subsequent testimony by Weston relating to what Cordier told him immediately prior to the assault which was that he (Weston) was lucky the last time when he stabbed him in the leg but that this time he would kill him if he did not submit to his demands. This latter testimony was elicited prior to the objections which were the subject of Bills of Exceptions Nos. 4 and 5. There was also prior testimony, without objection, by the assistant coroner to the effect that his examination of Weston on June 21, 1973 (date of the alleged incident) revealed not only seminal fluid in his anus, but also a stab wound on his right thigh.
We conclude that the testimony of Weston regarding the stab wound was relevant to show one of the necessary elements of the crime, i. e., that the victim was prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution.[1] It was also admissible as part of the res gestae.[2] Furthermore, since testimony regarding the stab wound was already before the jury, without objection, it must be considered that no prejudice resulted to defendant under these circumstances.
Bills of Exceptions Nos. 4 and 5 are without merit.
Bill of Exceptions No. 6 was reserved when the trial judge refused to allow defense counsel to recross-examine Weston. R.S. 15:281 provides:
"The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect. Act. 1966, No. 311, § 2, eff. Jan. 1, 1967."
The record reveals that defense counsel conducted an extensive cross-examination of Weston. During that cross-examination, he went into great detail regarding a written statement made by Weston denying that the offense had occurred. However, Weston testified that the statement was signed as a result of threats and coercion.
It is asserted by defense counsel that the State in its redirect-examination attempted to inject suspicion that the statement might have been supplied by defense counsel. It is contended that this amounted to "new matter" within the meaning of R.S. 15:281.
An examination of the record makes it clear that there was no new matter brought out on redirect and the trial judge correctly ruled that a recross would only be a reiteration of the previous testimony.
It is generally stated that the matter of permitting recross-examination is in the sound discretion of the trial judge and in the absence of some showing of an abuse of that discretion, and resulting prejudice, his ruling will not be disturbed on appeal. State v. Shirley, 256 La. 665, 237 So.2d 676 (1970), cert. den., 401 U.S. 926, 91 S.Ct. 891, 27 L.Ed.2d 829; State v. Byrd, 214 La. 713, 38 So.2d 395 (1949); State v. Fernandez, 157 La. 149, 102 So. 186 (1924). There is no showing of abuse of that discretion in this instance.
*185 Bill of Exceptions No. 6 is without merit.
Bill of Exceptions No. 7 relates to the testimony of another inmate, George Murphy, a defense witness. On direct examination, he denied having knowledge that defendant carried a knife. On cross-examination, the State inquired as to whether he had ever seen any prisoners in the Parish Prison with any weapons. This was objected to by defense counsel as being irrelevant. The objection was overruled, and this bill was reserved.
The ruling of the trial judge is correct. Weston had testified that defendant had pulled a knife on him at the time of the assault. Murphy had denied on direct examination any knowledge that defendant carried a knife. Thus, it was relevant on cross-examination to inquire into whether this witness had ever seen any prisoners in Parish Prison with any weapons. Under R.S. 15:280, when a witness has testified to any single fact in his examination in chief, he may be cross-examined upon the whole case.
Bill of Exceptions No. 7 is without merit.
Bill of Exceptions No. 8 was taken to the overruling of a motion for a new trial. The motion alleges that the verdict is contrary to the law and evidence and that the bills of exceptions reserved during the proceedings showed prejudicial error. No further specification of error is therein set out.
The averment is an attack upon the sufficiency of the evidence not reviewable on appeal. State v. Barnard, 287 So.2d 770 (La.1974); State v. Vincent, 284 So.2d 563 (La.1973).
Bill of Exceptions No. 8 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DIXON, J., concurs.
NOTES
[1] R.S. 14:89.1 provides in pertinent part:

"Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
* * * * *
"(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm accompanied by apparent power of execution; * * *"
[2] R.S. 15:448 provides:

"To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction."